BUNNY BREAD and UNITED STATES FIDELITY AND GUARANTY CO. *v.* William E. SHIPMAN

CA 79-103                                    591 S.W. 2d 692

Opinion delivered December 19, 1979
Released for publication January 9, 1980

*Frierson, Walker, Snellgrove & Laser*, for appellants.

*Warren E. Dupwe*, for appellee.

JAMES H. PILKINTON, Judge. This is a workers' compensation case and is before the court on appeal from an award of the Arkansas Workers' Compensation Commission finding that claimant is entitled, among other things, to all statutory benefits relating to a compensable injury suffered on December 11, 1978.

It was stipulated that on the date of the injury, claimant was a regular employee of Bunny Bread Company, earning a wage sufficient to entitle him to the maximum compensation rate of $87.50 per week.

The Commission found that appellee was injured within the scope of his employment and is therefore entitled to

temporary total disability benefits and controverted attorney's fees.

The appellants contend there is no substantial evidence to support the award, and say the claimant's accident did not arise out of the normal course of his employment. Appellants contend appellee was injured during a deviation from his duties and, therefore, have controverted this claim in its entirety. The appellee, William E. Shipman, was the only witness who testified below, and the entire record is not long. Actually, there is no dispute over any material fact in this case. Mr. Shipman was a route salesman for the appellant, Bunny Bread Company. His route ran from Walnut Ridge to Hardy, Arkansas. On December 11, 1978, while traveling to Hardy to make his next delivery, appellee saw a car in the ditch and a lady standing beside the road. He recognized the lady and noticed she was attempting to flag him down. Mr. Shipman was unable to stop immediately because of ice on the road. He proceeded past the disabled vehicle, turned around and returned to the stranded motorist. Her car was off the road and in a ditch. He pulled his bread truck to the side of the road, and went over to see what assistance he could render. As Mr. Shipman prepared to drive the lady's vehicle out of the ditch, he observed that the bread truck was perhaps blocking the ultimate pathway; and therefore, appellee attempted to get out of the stranded vehicle so that he could move the bread truck. Another vehicle, coming over the hill, slid on the icy road and crashed against the car on the side where Mr. Shipman was exiting, crushing his leg against the vehicle.

The sole issue involved is whether or not appellee's "good samaritan" act was such a deviation from his normal business duties as to take him outside the scope of his employment at the time of the injury.

The Commission held that the injury in question did arise out of and in the course of appellee's employment within the meaning of the law; that appellee-claimant has been temporarily and totally disabled for the period beginning December 12, 1978, and continuing to a date yet to be determined. Therefore, claimant's healing period has not

ended and the issue of permanent partial disability is not before the court. That question has been specifically reserved for future determination as provided by law.

## I.

It was the duty of the Commission to draw every legitimate inference possible in favor of the claimant and to give him the benefit of the doubt in making factual determinations. *Brower Manufacturing Co.* v. *Willis*, 252 Ark. 755, 480 S.W. 2d 950 (1972). Further, the Commission in considering a claim must follow a liberal approach and, as stated above, draw all reasonable inferences favorable to claimant. *Holland* v. *Malvern Sand and Gravel Co.*, 252 Ark. 755, 480 S.W. 2d 822 (1964). The same rules apply in determining whether the accident did, in fact, grow out of and occur in the course of the employment. *Cox Lumber Co.* v. *Jones,* 220 Ark. 431, 248 S.W. 2d 91 (1952); *Brooks* v. *Wage,* 242 Ark. 486, 414 S.W. 2d 100 (1967). See also *Tinsman Manufacturing Company, Inc.* v. *Sparks,* 211 Ark. 554, 201 S.W. 2d 573 (1947).

## II.

On appeal this court's inquiry is limited to determining whether the decision of the Arkansas Workers' Compensation Commission is supported by substnatial evidence, and in so determining, we are required to view the evidence in the light most favorable to the decision of the Commission. *St. Michael Hospital* v. *Wright*, 250 Ark. 539, 465 S.W. 2d 904 (1971). Doubtful cases are resolved in favor of claimant. *Cooper Industrial Products, Inc.* v. *Worth*, 256 Ark. 394, 508 S.W. 2d 59 (1974). Thus, in disposing of this appeal, this court is only concerned with whether there is substantial evidence in the record to support the findings and award of the Commission. It is not within this court's province to determine the preponderance of the evidence. *Mounts* v. *Bechtel Corp.*, 256 Ark. 318, 507 S.W. 2d 99 (1974). Before we could reverse, this court would have to be convinced that fair-minded persons, with these facts before them, could not have reached the conclusion arrived at by the Commission. *Purdy* v. *Livingston*, 262 Ark. 575, 559 S.W. 2d 24 (1977).

## III.

In considering the rules to be applied, it might also be mentioned that the burden of proof is on claimant-appellee to show that he sustained an accidental injury arising out of and during the course of his employment.

## IV.

As stated in 1 Larson, *Workmen's Compensation Law*, § 19.00 (1952):

> An identifiable deviation from a business trip for personal reasons takes the employee out of the course of his employment until he returns to the route of the business trip, *unless the deviation is so small as to be disregarded as insubstantial.* In some jurisdictions, the course of employment is deemed resumed if, having completed his personal errand but without having regained the main business route, the employee at the time of the accident was proceeding in the direction of his business destination. (Emphasis supplied.)

Appellants take the position that under the circumstances of this case the appellee deviated from the business trip for personal reasons or a "good samaritan" act; and consequently, took himself out of the course of his employment until such time as he resumed the course of his employment by completing his personal errand or the "good samaritan" act. Appellants' contention is without merit.

Here the claimant's act and deviation, if it may be properly so termed, was not a personal errand, but rather a "good samaritan" act. The claimant was traveling his normal route, driving a vehicle furnished by the employer, when he saw a disabled vehicle. Also important was the fact that the claimant-employee had been instructed by his employer that every member of the general public was a potential customer and should always be treated with courtesy and consideration. If rendering assistance to a disabled motorist, under the circumstances of this case, may be considered a deviation from normal employment duties, the Commission

determined that such action was not in time and place a sufficient deviation to constitute taking the claimant outside the scope of his employment. *Tinsman Manufacturing Company, Inc.* v. *Sparks, supra*; and *Cox Brothers Lumber Co.* v. *Jones*, 220 Ark. 431, 248 S.W. 2d 91 (1952).

There is substantial evidence in this record to support the conclusion of the Commission that the claimant's deviation from his normal employment was so minor as to be regarded as an insubstantial deviation. Further, in view of the indoctrination of the claimant and his instructions concerning good public relations, we might question whether or not claimant's "good samaritan" act was even a deviation from his employment. The employer's bread truck which the motorist flagged down had the Bunny Bread sign clearly displayed. Surely, except for the unfortunate accident which occurred, it would be difficult to argue that the employer would have objected to the claimant's action in lending assistance to a disabled motorist.

The pages of 1A Larson, *Workmen's Compensation Law*, § 27.22 (1952), are replete with illustrations of the lengths to which employees may be expected to go in pursuit of public good will. A number of courts have gone to considerable lengths in upholding awards for injuries occurring in the course of miscellaneous good samaritan activities by employees, on the theory that the employer ultimately profited as a result of the good will thus created. In *Lewis* v. *Kentucky Cent. Life Insurance Co.*, 20 N.C. App. 267, 201 S.W. 2d 228 (1973), an insurance collector and salesman was struck by an out of control automobile, while entering his own car after aiding a policy-holder whose automobile had stalled. He was held to have been in the course of his employment at the time of the accident. The test as applied by the North Carolina court is whether the employee was acting for the benefit of his employer or for his own benefit. The court held in that case that specific personal relations essential in the industry were promoted, as was also general good will.

In *Carey* v. *Stadther*, 219 N.W. 2d 76 (Minn. 1974), the widow of the deceased employee sought to recover depen-

dency compensation benefits for the death of her husband, a feed salesman, who had died while trying to rescue a man from a cesspool. The Supreme Court of Minnesota reversed the Workmen's Compensation Commission denial of benefits, and held that, when the deceased's employer encouraged this type of community service Carey had done that day, and looked upon such activities as an essential sales technique, the salesman's death arose out of and in the course of his employment, and his dependents were entitled to dependency benefits under the Workmen's Compensation Act.

The good-will rule attained its ultimate expression in *Gross* v. *Davey Tree Expert Company*, 248 App. Div. 838, 290 N.Y. 168 (1936). In that case a tree trimmer who observed a lady in distress descended from his immediate duties to assist the lady in getting her car started. In so doing, he was injured. The court held he was entitled to benefits under his practice of helping those in distress and the policy of the employer to do everything possible to encourage good will.

The Commission in the case before us found appellee was entitled to benefits under the Arkansas Workers' Compensation Act.

We find there is substantial evidence to support this conclusion.

Affirmed.