198

D&M CONSTRUCTION COMPANY and
MARYLAND CASUALTY COMPANY *v.*
Steve ARCHER and Robert SCHWITZER

CA 84-428　　　　　　　　　　　　　　686 S.W.2d 799

Court of Appeals of Arkansas
Division II
Opinion delivered March 27, 1985

*Barrett, Wheatley, Smith & Deacon,* for appellant.

*Wilson & Castleman,* for appellee.

TOM GLAZE, Judge. The appellant, D&M Construction Company, appeals from the Commission's finding that the appellee, Steve Archer, suffered a compensable injury to his hand while employed by appellee, Robert Schwitzer, an uninsured subcontractor of D&M Construction Company, within the meaning of Ark. Stat. Ann. § 81-1306 (Repl. 1976). Under § 81-1306, the prime contractor is liable for

compensation to the employees of the subcontractor when the subcontractor fails to secure compensation coverage. Here, no dispute exists that D&M was a prime contractor and Schwitzer had no coverage. Rather, appellant contends that the Commission erred in finding: (1) Archer was an employee (not an independent contractor) of Schwitzer, (2) Schwitzer was an uninsured subcontractor (not an independent contractor), and (3) Archer's injury occurred within the scope of employment. We affirm.

Appellant's first point for reversal is that Archer was an independent contractor rather than Schwitzer's employee. As an independent contractor, Archer would not be entitled to relief from D&M Construction under Ark. Stat. Ann. § 81-1306. As we stated in *Silvicraft, Inc.* v. *Lambert,* 10 Ark. App. 28, 661 S.W.2d 403 (1983), the determination of whether, at the time of injury, a person was an employee or an independent contractor is a factual one and the Commission is required to follow a liberal approach, resolving doubts in favor of employment status for the worker. We view the evidence in the light most favorable to the Commission's decision, and affirm if it is supported by substantial evidence. *Id.* Because Archer had worked for Schwitzer only one day when he was injured and the association between Archer and Schwitzer was limited in time, the Commission had fewer facts to weigh in determining the employment status between them.

Appellant relies upon *Sandy* v. *Salter,* 260 Ark. 486, 541 S.W.2d 929 (1979), in support of its contention that Archer was an independent contractor. Appellant contends that under *Sandy,* control is an important consideration in determining whether an employer/employee relationship exists, and that Schwitzer exercised only minimal control over Archer.

In *Silvicraft, Inc.* v. *Lambert, supra,* we gave examples of factors that may be used in determining the right to control, including the right to determine the manner of completing the work, the right to terminate, the right to hire or control the hiring of helpers, the method of payment and the furnishing of necessary tools and equipment. In apply-

ing those factors to the case at bar, we note that Schwitzer hired Archer to haul rock from a quarry in Harrison to a dump site near Yellville. Archer was to be paid twenty-five percent of Schwitzer's gross pay for each load of rock with no withholding for taxes or Social Security. Schwitzer furnished the truck and equipment and paid expenses. Schwitzer took Archer to the job site and told him what to do. On the day of the accident, Schwitzer instructed Archer to take the truck to Imboden, one hundred miles from the job site, to have a broken spring repaired. Archer testified that Schwitzer would be the one to tell him "what to do or who to see." The question on appeal is not whether the facts at bar would have supported the opposite conclusion, but whether these facts supported the decision the Commission made. *Franklin* v. *Arkansas Kraft, Inc.*, 12 Ark. App. 66, 670 S.W.2d 815 (1984). We believe the Commission's finding that Archer was Schwitzer's employee is supported by substantial evidence under either the control test or the relative nature of the work test. *Id.*

Appellant's second point for reversal is that Robert Schwitzer was an independent contractor rather than an uninsured subcontractor and thus not entitled to relief under § 81-1306. Appellant relies upon *Hollingsworth* v. *Evans*, 255 Ark. 387, 500 S.W.2d 382 (1973), to support his contention. *Hollingsworth* presented a different question than the instant case. Whereas here we are concerned with the relationship between D&M Construction Company (the prime contractor) and Schwitzer (the middleman), *Hollingsworth* involved the relationship between Hollingsworth (the middleman) and Mr. and Mrs. Evans (the workers under Hollingsworth). Hollingsworth had workers' compensation insurance and the Evanses, who were injured, were attempting to bring themselves within its provisions by showing that they were either Hollingsworth's employees or his uninsured subcontractor within § 81-1306. The Supreme Court denied the Evanses coverage, finding that they were neither Hollingsworth's employees nor employees of an uninsured subcontractor. They themselves may have been uninsured subcontractors, but the Court said that the statute does not provide coverage, as a matter of law, for the subcontractor himself, only to his

employees. Mr. and Mrs. Evans simply did not fall into the category that the statute was written to protect.

The Court set out the definition of a subcontractor as follows:

"One who takes a portion of a contract from principal contractor or another subcontractor. . . . One who has entered into a contract, express or implied, for the performance of an act with the person who has already contracted for its performance."

*Id.* at 394, 500 S.W.2d at 385-86 (quoting *Black's Law Dictionary* (Rev. 4th ed.)). The Court quoted also from a New Jersey case:

"A subcontractor is one who enters into a contract with a person for the performance of work which such person has already contracted to perform. In other words, subcontracting is merely 'farming out' to others all or part of work contracted to be performed by the original contractor."

*Hollingsworth* at 394-95, 500 S.W.2d at 386 (quoting *Gaydos* v. *Packanack Wood Dev. Co.,* 166 A.2d 181, 184); *see also Bailey* v. *Simmons,* 6 Ark. App. 193, 639 S.W.2d 526 (1982).

We believe those definitions precisely describe Schwitzer. He entered into a contract with appellant D&M to perform a portion of D&M's contract with the Corps of Engineers. In other words, D&M "farmed out" to Schwitzer a part of its work (hauling rocks) to be performed in making repairs on Crooked Creek near Yellville. The evidence clearly supports the Commission's finding that Schwitzer was appellant's subcontractor.

Appellant's last point for reversal is that Archer's actions that gave rise to his injury were not within the scope of his employment. Citing no authority, appellant contends that the purpose of § 81-1306 would be subverted by applying it to this case because the provision applies to the performance of work that is necessarily done by employees

of a subcontractor in actions related to or in furtherance of the general contractor's performance. Applying the section to the instant case would create "almost limitless liability for a general contractor when an employee of an uninsured subcontractor is injured," appellant contends.

In *Dallas County Pulpwood Co.* v. *Strange*, 257 Ark. 799, 520 S.W.2d 247 (1975), the Supreme Court considered whether Strange's injuries arose out of and in the course of employment under circumstances comparable to those at hand. On the day he was injured, Strange engaged in selecting and financing a tractor he was purchasing to get logs out of the woods for his employer pulpwood company. Strange went home to get his truck to tow the tractor to the worksite so that he could resume cutting timber the next morning. As he backed his truck out of his driveway, he fell from it and was run over by one of its wheels. The Court said that an employee's preliminary preparations that are reasonably essential to the proper performance of some required task or service are generally considered within the scope of employment. *Id.* at 802, 520 S.W.2d at 248. The Court cited cases from other jurisdictions in which claimants were compensated for injuries that occurred in preparing for work. *E.g., McBride* v. *Preston Creamery Ass'n*, 228 Minn. 93, 36 N.W.2d 404 (1949) (claimant injured while sanding icy hill on private road so he could drive to work the next morning to haul milk for employer); *Fels* v. *Industrial Commission*, 269 Wis. 294, 69 N.W.2d 225 (1955) (claimant injured while repairing own dump truck in order to take it the next morning to jobsite).

In the instant case Archer testified that Schwitzer instructed him to drive the truck to a repair shop in Imboden, one hundred miles away, and to help repair the truck because it was necessary to have it available for Archer to continue working the next morning. Schwitzer also testified that he instructed Archer to drive the truck to Imboden and that it was necessary to have the truck repaired to be on the job the next morning, although he denied instructing Archer to assist with repairs. The Commission found that Archer acted at his employer's direction in driving the truck to Imboden for repairs, that the repairs

were being made on an emergency basis so that the truck could be used to conduct appellant's business the next morning, and that the speed in making repairs would accrue to appellant's benefit. To that end, Schwitzer was performing services for appellant at the time his employee, Archer, was injured, and as a consequence, Archer was insured under the appellant's policy pursuant to § 81-1306.

We believe that the Commission's reasoning illustrates exactly the purpose for which § 81-1306 was written and that substantial evidence supports its findings. Therefore, we affirm.

Affirmed.

CRACRAFT, C.J., and CORBIN, J., agree.